IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE M. BULGER, | ) | CASE NO. 5:08 CV 1715 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of
Social Security denying the applications of the plaintiff, Constance M. Bulger, for disability
insurance benefits and supplemental security income.  The parties have consented to
magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of
the Commissioner, found that Bulger had severe impairments consisting of left occipital
aneurysm, status post craniotomy and later coiling of the aneurysm, left eye blindness,
fibromyalgia, and major depressive disorder.[1]  The ALJ made the following finding regarding
Bulger's residual functional capacity:

> Ms. Bulger has the residual functional capacity to perform work at the light
> exertional level with restrictions.  Specifically, Ms. Bulger can lift and carry
> up to 20 pounds occasionally and 10 pounds frequently; sit for six hours of an
> eight-hour day; and stand and/or walk for six hours of an eight-hour day.  She

---

[1] Transcript ("Tr.") at 15.

is limited to low-stress work, e.g., no interaction with the public, co-workers, or supervisors. Ms. Bulger cannot work in proximity to unprotected heights, dangerous moving machinery, or hazards and cannot drive automotive equipment. Ms. Bulger cannot perform work requiring depth perception or peripheral vision.[2]

The ALJ determined that the above-quoted residual functional capacity precluded Bulger from performing her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity finding, the ALJ decided that a significant number of jobs existed locally and nationally that Bulger could perform prior to November 26, 2006, the date on which Bulger attained 55 years of age, and her age category changed to an individual with advanced age.[4] He, therefore, found Bulger not under a disability prior to November 26, 2006.[5]

The ALJ went on to decide that beginning on November 26, 2006, the date when Bulger's age category changed, there was not a significant number of jobs nationally and locally that she could perform, applying the medical-vocational guidelines in Appendix 2 of the regulations.[6] The ALJ, therefore, found Bulger under a disability as of that date.

---

[2] *Id.* at 16.

[3] *Id.* at 19.

[4] *Id.* at 20.

[5] *Id.*

[6] *Id.* at 21.

Bulger asks for reversal of the Commissioner's decision for the time period prior to November 26, 2006, on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, she argues that based on the testimony of the vocational expert, the ALJ could only conclude that she became disabled as of January 8, 2004.

After careful review of the administrative record, I conclude that substantial evidence supports the ALJ's finding that Bulger was not disabled before November 26, 2006.  The Commissioner's decision to deny disability insurance benefits and supplemental security income, therefore, must be affirmed.

## Analysis

**1.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

-3-

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[7]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[8]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[9]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     Substantial evidence supports the November 26, 2006, onset date of Bulger's disability.**

Bulger bases her argument on the assessment of her mental impairments made by the state agency reviewing psychologist, the ALJ's decision to give that assessment full weight, and a hypothetical posed to the vocational expert by Bulger's counsel purporting to quantify the work-related limitations suggested by the state agency reviewing psychologist's assessment.  As explained below, Bulger's reasoning is flawed.

The state agency reviewing psychologist, Marianne N. Collins, Ph.D., assessed Bulger as having affective disorders, specifically recurrent major depression.[10]  Dr. Collins rated the

---

[7] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[8] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[9] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[10] Tr. at 171, 174.

severity of the disorders moderately limiting with respect to the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting.[11]  In terms of work-related limitations appropriate for this impairment, Dr. Collins observed "[c]laimant retains the mental capacity to perform work-related activities, consistent with her physical limitations, in a calm, consistent setting with only occasional changes in the routine."[12]

The ALJ gave Dr. Collins's opinion full weight.[13]

Consistent with that opinion, he incorporated into the residual functional capacity finding a limitation to low-stress work, *e.g.*, no high production quotas, and no more than minimal interaction with the public, co-workers, or supervisors.[14]  His hypothetical to the vocational expert incorporated even greater mental, work-related limitations – jobs that did not require high production quotas, a limitation to low stress work, no work situations involving frequent changes in routine that would cause stress, and superficial contact with

---

[11] *Id.* at 185-86.

[12] *Id.* at 187.

[13] *Id.* at 18.

[14] *Id.* at 16.

the public, co-workers, and supervisors.[15]  In response to that hypothetical, the vocational expert identified a significant number of jobs available locally and nationally that Bulger could perform.[16]

On cross-examination, counsel for Bulger posed several hypotheticals incorporating moderate impairments as identified by Dr. Collins and quantified "moderate" as 15 to 20% of the workday.[17]  In response to the hypotheticals with that definition, the vocational expert indicated that no jobs would be available.[18]

Bulger argues in essence that when the impairments identified by Dr. Collins were incorporated into hypotheticals to the vocational expert, the vocational expert testified that no jobs would be available that Bulger could perform.  She concludes, therefore, that this testimony compels a finding in her favor at step five of the sequential evaluation process.

A proper hypothetical question to a vocational expert at a hearing must include an assessment of what the claimant "can and cannot do."[19]  The hypothetical should reference all of the claimant's physical and mental limitations.[20]  The hypothetical, however, need only reference the claimant's limitations, without reference to the claimant's medical impairments

---

[15] *Id.* at 472.

[16] *Id.* at 472-73.

[17] *Id.* at 474-75.

[18] *Id.*

[19] *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

[20] *Id.*

or the severity thereof.[21]   What is critical to the hypothetical is how the claimant's impairments, giving due consideration to the degree of severity thereof, translate into work-related limitations.

Accordingly, the ALJ did not err by deleting reference to Bulger's mental impairment or the degree of severity thereof from the hypothetical.  Dr. Collins offered an opinion as to the work-related limitations caused by the impairments noted, and the ALJ likewise imposed work-related limitations based on Dr. Collins's opinion.   Furthermore, counsel's hypotheticals referring to impairments with a moderate degree of severity were not proper hypotheticals under the law of the Sixth Circuit.[22]

Furthermore, the portion of counsel's hypothetical that resulted in the vocational expert's testimony as to the existence of no jobs was the quantification of moderate severity as rendering Bulger incapable of working 15 to 20% of the workday.  At the oral argument, counsel conceded that this quantification has no basis in the regulations and the case law.  Moreover, recent authority expressly rejects such a quantification in a context substantially similar to this case.

In *Seaman v. Astrue*,[23] the District Court for the Western District of Wisconsin confronted a case in which the state agency reviewing psychologist found moderate limitation in restriction of daily living, moderate difficulties in maintaining social

---

[21] *Id.*

[22] *Id.*

[23] *Seaman v. Astrue*, No. 07-cv-0588-BBC, 2008 WL 3925829 (W.D. Wis. Aug. 19, 2008).

functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.[24] The ALJ, based on this opinion, limited the claimant to unskilled, light jobs that did not require high production goals or more than brief superficial contact with the public or with others in the workplace.[25] As counsel for Bulger did here, the claimant's attorney asked a hypothetical including reference to the moderate limitations found by the state agency reviewing physician.[26] The vocational expert testified that if moderate meant that the claimant could perform a particular task only 80 to 90% of the workday, competitive employment would not be possible.

Absent that quantification, the vocational expert testified that a significant number of jobs existed locally and nationally that the claimant could perform.[27]

The reviewing court affirmed the ALJ's decision based on the vocational expert's testimony without the quantification of moderate.[28] The court found the quantification without foundation:

> First, she contends that the Administrative Law Judge's hypothetical question was incomplete because it omitted any limitation on the plaintiff's ability to maintain concentration, persistence, and pace. Pointing out that the Administrative Law Judge found the plaintiff to have "moderate limitations in this area," plaintiff proposed that "moderate" means that she could not consistently perform a job 100% of the time, which would preclude

---

[24] *Id.* at *4.

[25] *Id.* at **6, 11.

[26] *Id.* at *7.

[27] *Id.*

[28] *Id.* at *12.

-8-

competitive employment.  Plaintiff sites no evidence to support her assertion that a person with "moderate limitations in concentration, persistence, and pace can meet only 80% of her employer's expectations.  Certainly, a person with such moderate limitations could not perform *all* jobs, such as those requiring a high degree of skill, concentration or speed.  However, the Administrative Law Judge eliminated those types of jobs when she found that the plaintiff was limited to unskilled work requiring no high production goals.  Accordingly, his hypothetical was complete.[29]

Consistent with the case law, substantial evidence supports the ALJ's translation of the mental impairments and the severity thereof as opined by Dr. Collins into the work-related limitations incorporated into the hypothetical posed to the vocational expert.  In response to that hypothetical, the vocational expert identified a significant number of jobs locally and nationally that Bulger could perform.  The ALJ having posed a proper hypothetical to the vocational expert, the vocational expert's answer constitutes substantial evidence in support of the finding at step five of the sequential evaluation process.[30]

## Conclusion

Substantial evidence supports the finding of the Commissioner that Bulger had no disability prior to November 26, 2006.  Accordingly, the decision of the Commissioner denying Bulger disability insurance benefits and supplemental security income for the period before that date is affirmed.

IT IS SO ORDERED.

Dated:  July 14, 2009                                                    s/ William H. Baughman, Jr.
                                                                                   United States Magistrate Judge

---

[29] *Id.* (emphasis in the original).

[30] *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).